FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2009 JUL 22 | A 10: 20

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

ANCHOR TOWER, LLC, A FLORIDA )
LIMITED LIABILITY COMPANY, )
)
PLAINTIFF, )
)
vs. )
) Case No. 3:09-cv-676-J-32McR
CITY OF JACKSONVILLE, FLORIDA, )
)
DEFENDANT. )
)
)
)

## COMPLAINT

The Plaintiff, **ANCHOR TOWER, LLC** ("Anchor"), by and through its undersigned counsel, hereby sues the Defendant, City of Jacksonville, Florida (the "City"), and alleges as follows:

### PARTIES

1. Anchor is a limited liability company organized under the laws of the State of Florida with its principal place of business in Winter Park, Florida.

2. The City is a municipality formed under the laws of the State of Florida.

### JURISDICTION

3. This is an action for declaratory and injunctive relief pursuant to the Federal Telecommunications Act of 1996, 47 U.S.C. §§ 332, et seq. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. Declaratory relief is authorized by 28 U.S.C. § 2201. This Court has jurisdiction pursuant to 28 U.S.C. § 1367.

ORLA_1300365.1

## NATURE OF THE ACTION

4. On June 25, 2009, the City denied Anchor's application for a 160' low impact/stealth telecommunications tower. Anchor now seeks a declaratory judgment that the denial is void as violative of the Federal Telecommunication Act of 1996, 47 U.S.C. § 332, et seq. Anchor further seeks a mandatory injunction ordering the City to approve the application as submitted in accordance with the Federal Telecommunications Act.

## VENUE

5. Venue is proper in this district because Plaintiff maintains its principal place of business in this district, the City resides or is found within this district, a substantial part of the events or omissions giving rise to the claim have occurred within this district, and the property at issue is located within this district.

## GENERAL ALLEGATIONS

6. Anchor is in the business of providing service to various licensed personal wireless telecommunications providers by locating, leasing, zoning, constructing, and owning personal wireless service facilities.

7. Anchor proposed to build a 160' Low Impact/Stealth Telecommunications Tower (the "Proposed Tower") on a parcel of land leased from the Spencer Engineering & Exploration Co., Inc. (the "Leased Parcel"). The Spencer Engineering property is a undeveloped and forested tract of land (the "Spencer Property") located within the City of Jacksonville. Anchor's anchor tenant for the tower is Verizon Wireless. Verizon Wireless is in the business of providing cellular telecommunications services. Verizon Wireless requested the construction of a tower on which to locate its personal wireless service

2

facilities to close a service coverage gap in its cellular telecommunications services in Jacksonville. In addition to these service coverage needs, the tower would also provide E911 location services to the surrounding area while augmenting the mobile in vehicle basic emergency 911 services.

8. The Spencer Property is located on the south side of Cedar Point Road, between Rooster Spur Circle and Nungezer Road and is zoned AGR (Agricultural). The Spencer Property contains approximately 67 acres and has an Agricultural-iii Future Use designation.

9. The City of Jacksonville Land Development Code § 656.1506 contains the requirements for approval of the Proposed Tower. Section § 656.1506 specifically provides as follows:

**Section 656.1506 Track II Towers:**

Applications to construct a camouflaged tower not satisfying the criteria set forth in Section 656.1505, Ordinance Code, or low impact/stealth tower shall be assigned for processing on a "Track II" schedule. Within 15 days of notification from the Coordinator that the application is complete, a Track II application shall be scheduled for review at the next regularly scheduled meeting of the Commission. The Commission shall approve, deny or conditionally approve the application where it finds that the proposed tower (1) complies with the tower siting and design standards and performance standards of this Subpart; and (2) is compatible with the existing contiguous uses or zoning and compatible with the general character and aesthetics of the surrounding neighborhood or area, considering (a) the design and height of the wireless communication tower; and (b) the potential adverse impact upon any environmentally sensitive lands, historic districts or historic landmarks, public parks or transportation view corridors.

ORLA_1300365.1

10. The "Commission" referred to in Section 656.1506 is the City of Jacksonville Planning Commission.

11. Section 656.1506(b) sets forth the tower siting and design standards and performance standards, referred to above, as follows:

> (b) *Low impact/stealth towers.* Except as set forth in Section 656.1514, Ordinance Code, low impact/stealth towers shall be permitted in all zoning districts, including Planned Unit Development Districts, subject to the following siting and design requirements:
>
> (1) *Height.* The maximum height of low impact/stealth towers in any residential zoning district is 110 feet. In all other districts, the maximum height of low impact/stealth towers is 130 feet; provided, however, that a variance may be sought from the Tower Review Committee in accordance with the provisions of this Subpart to increase the maximum height of a proposed low impact/stealth tower in a nonresidential zoning district up to an additional 30 feet. No variance shall be required, however, where close-mount antennas are proposed to be located on that portion of a low impact/stealth tower in excess of 130 feet, so long as the overall tower height of the tower does not exceed 160 feet and the tower is located in a nonresidential zoning district.
>
> (2) *Setbacks.* Regardless of the zoning district in which a low impact/stealth tower is located; the tower shall be set back a distance of at least: (a) 250 feet or 200 percent of the tower height, whichever distance is greater, from the nearest residential lot line of any single family residence or single – family residentially-zoned property, including residential PUD districts and properties with a single-family residential component in a mixed-use PUD district or AGR IV land use category; provided, however, that this setback shall not be required where legal title to the nearest residential parcel is held by the owner of the tower site; and (b) 150 feet or 100 percent of the tower height, whichever distance is greater, from the nearest residential lot line of any Residential Medium Density (RMD), Commercial/Residential/Office (CRO) or Residential High Density (RHD) zoning districts; provided, however, that this setback shall not be required where legal title to the nearest residential parcel is held by the owner of the tower site. In the event that the proposed tower is to be located within a mixed use Planned Unit Development (PUD), the minimum distances set forth herein shall be measured from the nearest residential use. Stealth towers shall also be set back a minimum distance of 250 feet or 200 percent of the tower height, whichever distance is greater, from the nearest boundary of a public park, historic district, historic landmark, Neighborhood Conservation District or environmentally sensitive lands, and a minimum distance of 100 feet from any transportation view corridor.

4

   (3) *Separation.* No low impact/stealth tower shall be permitted to be constructed within 1,500 feet of another stealth tower or a conventional wireless tower.

   (4) *Collocation.* Any low impact/stealth tower proposed to be constructed between 100 and 110 feet in height shall be designed to accommodate antennas for at least two separate wireless communication service providers. Any low impact/stealth tower proposed to be constructed in excess of 110 feet in height shall be designed to accommodate antennas for at least three separate wireless communication service providers.

12. On April 7, 2009, Anchor submitted an application (the "Track II Application") for approval of the Proposed Tower. A true and correct copy of the Application is attached hereto as **Exhibit "A."**

13. There is no dispute in the record that the Proposed Tower met all of the locational, design, and performance criteria set forth in § 656.1506(b) of the City of Jacksonville Land Development Code.

14. The Application submitted by Anchor demonstrated the following:

  a. The Proposed Tower's distance from adjacent single family residences and adjacent single family residentially zoned land exceeded the 320' setback requirement in the City's Land Development Code; and

  b. The Proposed Tower's distance from any Residential Medium Density, Commercial/Residential/Office, or Residential High Density zoning districts exceeded the 160' setback requirement in the City's Land Development Code; and

  c. The Proposed Tower's distance from the nearest boundary of any public park, historic district, historic landmark, Neighborhood Conservation District, or environmentally sensitive lands exceeded the 320' setback requirement in the City's Land Development Code; and

  d. The Proposed Tower's distance from any transportation view corridor exceeded the 160' setback requirement in the City's Land Development Code; and

  e. The Proposed Tower was designed with an antennae mount a maximum of 24" from the face of the pole, meeting the Land Development Code's definition of "Low Impact/StealthTower"; and

5

    f. The Proposed Tower's location was sited ±1.53 miles from the closest telecommunications tower, meeting the 1,500' tower to tower separation requirement in the City's Land Development Code; and

    g. The Proposed Tower was designed to accommodate 6 service providers meeting the requirement in the City's Land Development Code that it be designed for a minimum of three wireless service providers.

  15. Section 656.1506 of the City's Land Development Code provides that Planning Commission action on a Track II application is final action of the City.

  16. In preparation for the Planning Commission hearing, the planning staff of the City prepared a Staff Report recommending denial. <u>See</u> Staff Report attached as **Exhibit "B."**

  17. The City of Jacksonville Planning Commission heard the matter at its June 25, 2009 meeting. A transcript of that hearing is attached as **Exhibit "C."**

  18. At the hearing the City Staff read most of its Staff Report into the record and recommended denial of the Proposed Tower.

  19. At the Planning Commission hearing, no citizens appeared. The only testimony adduced at the hearing came from either the City Staff or Anchor Tower, the Applicant.

  20. The Planning Commission voted to deny the request to place the Proposed Tower "based on the staff report and the competent substantial evidence contained therein."

  21. After the hearing on June 25, 2009, Anchor was provided with a copy of the Order Denying Application for Camouflaged/Low Impact-Stealth Tower CTW-09-03, attached hereto as **Exhibit "D,"** dated June 25, 2009. The Order contains the following findings:

      a. The Applicant has complied with all of the application requirements set forth in Section 656.1508, *Ordinance Code.*

      b. That the land to which this application is granted is owned by Spencer Engineering & Exploration Co., Inc. A copy of the legal description of the subject property is attached as part of **Exhibit "A"** and incorporated by reference herein.

      c. The proposed tower complies with the tower siting and design standards and performance standards of Part 15, Subpart A, *Ordinance Code.*

      d. The proposed tower design is not compatible with the existing contiguous uses or zoning and is imcompatible with the general character and aesthetics of the surrounding neighborhood and area.

      e. The application for Camouflaged/Low Imapct-Stealth Tower CTW-09-03 is hereby **DENIED**.

22. The Findings of Fact, however, set forth in the Order, are not supported by competent, substantial evidence in the record.

## THE FEDERAL TELECOMMUNICATIONS ACT OF 1996

23. The United States Congress enacted the Federal Telecommunications Act of 1996 (the "Act") to create a national policy framework to accelerate the deployment of telecommunications technology. The Act does so in part by placing certain substantive and procedural limitations upon the authority of local bodies to regulate and limit the construction of facilities for wireless communication services.

24. One of those limitations, found in 47 U.S.C. § 332(c)(7)(B)(iii), requires that "any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

25. Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof, may, within 30 days after such action or

7

failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. See 47 U.S.C. § 332 (c)(7)(B)(v).

26. The City violated the provisions of the Act when it denied Anchor's Application for a 160' Low Impact/Stealth Telecommunication Tower without substantial evidence in the written record to support its actions.

27. Based upon the above allegations, Anchor is entitled to declaratory and injunctive relief under the Act, 47 U.S.C. §§ 332, et seq., and 28 U.S.C. § 2201.

28. Anchor has no adequate remedy at law and there is an actual, practical, and present need for declaratory and injunctive relief to further the policies of the Act.

29. All conditions precedent to bringing this action have been met or waived.

## COUNT I (FOR DECLARATORY RELIEF)

30. Anchor realleges and incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

31. This is an action for declaratory relief pursuant to 47 U.S.C. § 332 and 28 U.S.C. § 2201.

32. On April 7, 2009, Anchor submitted an Application to the City for approval to construct a 160' Low Impact/Stealth Telecommunications Tower on property located within the City of Jacksonville, Florida.

33. The Proposed Tower met all of the criteria set forth in the City's Land Development Regulations for approval of telecommunications towers.

8

34. The City violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii). There was no other competent substantial evidence on the record to support a finding that denial would prohibit communications service to the area.

35. As the City has failed to support its denial with written findings of fact supported by substantial evidence, its decision cannot stand under the Federal Telecommunications Act.

WHEREFORE, Anchor respectfully requests that this Court enter an order declaring the City's denial of Anchor's Application to construct its 160' Low Impact/Stealth Telecommunications Tower as null and void; for the costs associated with prosecuting this action; and for such other relief as the Court deems just and proper.

## COUNT II (FOR INJUNCTIVE RELIEF)

36. Anchor realleges and incorporates by reference paragraphs 1 through 22 as though fully set forth herein.

37. This is an action for injunctive relief pursuant to 47 U.S.C. § 332.

38. On April 7, 2009, Anchor submitted an Application to the City for special use approval to allow it to construct a 160' Low Impact/Stealth Telecommunications Tower on property located within the City of Jacksonville, Florida.

39. The Proposed Tower met all the requirements of the City's Land Development Code.

40. The City violated the Act because its denial was not supported by substantial competent evidence. See 47 U.S.C. § 332(c)(7)(B)(iii).

41. Thus, pursuant to the Act the City's decision cannot stand.

42. Because the denial of Anchor's Application is not supported by competent, substantial evidence, this Court, pursuant to the Act, should issue an injunction mandating the approval of the Application as submitted on this record.

WHEREFORE, Anchor respectfully requests that this Court enter an order declaring the City's denial of Anchor's application for a 160' Low Impact/Stealth Telecommunications Tower null and void; for a mandatory injunction instructing the City to approve Anchor's Application as submitted; for the costs associated with prosecuting this action; and for such other relief as this Court deems just and proper.

Dated: July 21, 2009

Respectfully submitted,

_____
Mary D. Solik
Florida Bar No. 0856479
msolik@orlando-law.com
**Law Offices of John L. Di Masi, P.A.**
801 North Orange Ave., Suite 500
Orlando, FL 32801-1014
407.839.3383
407.839.3384 (fax)

Attorneys for Anchor Tower, LLC

# ATTACHED EXHIBITS NOT SCANNED

**\*\*REFER TO COURT FILE\*\***